1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

VINCENT REYES,

              Plaintiff,

      v.

JOANNE B. BARNHART,
Commissioner of Social Security,

              Defendant.

Case No.  C06-5055RJB

REPORT AND
RECOMMENDATION

Noted for December 22, 2006

17

18

19

20

21

       This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Magistrate Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W.
v. Weber, 423 U.S. 261 (1976).  This matter has been briefed by the parties.  The undersigned now submits
the following report, recommending that the Court affirm the administrative decision to deny plaintiff
social security benefits.

22

### INTRODUCTION

23

24

25

26

       Mr. Reyes is currently 36 years old.  He has not worked since March 12, 2000.  He alleges he
became disabled on March 12, 2000 due to injuries he received in an automobile accident.  He had a
second automobile accident on April 27, 2000.  Prior to that, he had worked as a painter, a landscaper, and
as an entertainer playing in a band.

27

28

       Mr. Reyes has been diagnosed with a variety of impairments including, chronic back pain
syndrome, mild neuropathic pain, anxiety, restless leg syndrome, depressive disorder, insomnia,

1  postlaminectomy syndrome, chronic fatigue and deconditioning, as well as degenerative disc disease.

2      The first record of treatment after the accident was a cervical x-ray on March 13, 2000.  Medical

3  care has been provided by a variety of professionals, including conservative treatment from massage

4  therapists and chiropractors to more invasive surgical treatment.  Surgery was performed on Mr. Reyes'

5  back on October 12, 2000 by Dr. Goler, M.D., a neurosurgeon.  The procedure was a L5 - S1

6  laminectomy and discectomy and left S1 foraminotomy.  Following surgery, Dr. Goler examined Mr. Reyes

7  and thought that there had been a good result, recommending physical therapy and conditioning.  Since his

8  surgery, Mr. Reyes has been treated for associated pain.  Mr. Reyes has been diagnosed with chronic pain

9  and a somatoform disorder.

10     Mr. Reyes filed an application for insured disability benefits (Title II) with a protective filing date of

11  September 18, 2001 (Tr. 62). He filed an application for SSI benefits (Title XVI) on September 18, 2001

12  (Tr. 774). He alleged he was unable to work "due to siatica [sic] condition consits [sic] of perment [sic]

13  nerve damage in leg & pack and chronic pain illness" (Tr. 73).  His claim was denied initially and upon

14  reconsideration.  He filed a timely request for a hearing, which was held on January 4, 2005.  Dr. Douglas

15  South, M.D., a medical expert, Dr. Norman Gustavson, Ph.D., a psychologist, and Richard King, a

16  vocational expert, each testified at the hearing at the request of the Administrative Law Judge (ALJ).

17     The ALJ issued an unfavorable decision on March 16, 2005.  A request for review of the hearing

18  decision was filed with the Appeals Council on April 11, 2005.  On January 20, 2006, the Appeals Council

19  denied review, making the ALJ's the final administrative decision.  Plaintiff now brings the instant action

20  pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain

21  judicial review of the final decision denying plaintiff's application for benefits.

## DISCUSSION

23     The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the

24  decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th

25  Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant

26  evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales,

27  402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla

28  but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

1   Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

2   interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d 577, 579

3   (9th Cir. 1984).

4   **A.   THE ALJ PROPERLY WEIGHED MR. REYES' CREDIBILITY**

5   Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority

6   on evaluating plaintiff's subjective complaints.   Bunnell requires the ALJ findings to be properly supported

7   by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator

8   rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's

9   testimony regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215

10  (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform

11  household chores and other activities that involve many of the same physical tasks as a particular type of

12  job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen,

13  *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require

14  that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be

15  easily transferrable to a work environment where it might be impossible to rest periodically.

16  Here, plaintiff raises the issue of whether the ALJ erred in finding plaintiff's testimony not credible.

17  After reviewing the record, the court finds that the ALJ properly weighed plaintiff's credibility.

18  After summarizing and discussing plaintiff's medical complaints and history, the ALJ specifically

19  found, "The undersigned finds the claimants allegations regarding his limitations are not totally credible for

20  the reasons set forth in the body of the decision" (Tr. 31).  The ALJ summarized Plaintiff's testimony as

21  follows:

22      At the hearing the claimant testified that he lived with his girlfriend and he did some
        housework such as vacuuming, dusting, folding laundry and cooking.  He said that he could
23      lift 10 pounds and walk a half block to a block.  He said that he could sit 15-45 minutes.
        He said that he could drive ten blocks and visited his mother once a month for fifteen
24      minutes.  He said that he watched television for two to four hours.  He has been attending
        school part time since January of 2004 in broadcast technology.  He got his audio sound
25      certificate last year.  He said that he got up at 6:30 and got ready for school.  He drove five
        blocks to school and then came home form school and rested.  If his leg hurt he would lie
26      down for the remainder of the day.  He said that he only slept three to four hours a night.
        He sometimes had problems tying his shoes and he had problems bathing if his leg went out.
27      He said that from 1989 to 1994 he worked as an entertainer, singing and playing guitar in
        coffee shops and church youth groups.  He worked until 1999 as a painter and worked two
28      years doing landscaping on a seasonal basis.  He said that he could not eat on a regular basis
        and some smells made him sick.  He had ulcers and stomach cramps and sometimes could

REPORT AND RECOMMENDATION
Page - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

not take his mediation because he had taken no food.  He said that he last saw Dr. Egnew in November of 2004.

He testified that he did not work well with others.  He had a short temper and anxiety.  He said that he did not think he communicated well with others.  He had an agreement with his instructor that he could leave class if he got anxious and needed to leave.  He said that his heart raced and he got sweaty when he had these episodes.  He said that he had a short fuse with others at school when he was trying to deal with groups.  He said that he had feelings of anxiety three to four times a week at school.  He reported stomach cramps from one hour to all day every day.  He said that he had pain from his mid back to his left big toe and a warm burning sensation in the upper back.  His medications help keep his pain level at a 6 on a scale of 1-10.  He said that he was depressed with feelings of worthlessness, carrying [sic], and suicidal ideation.  He said that this was getting worse.  He said that he weighed 158 pounds and had lost 24 pounds in two years.  He said that he was dizzy if he looked at the screen to long or did not eat on time.  He said that he went to school four to five days a week up to three hours.  He said that he had fallen at the Puyallup fair and at his residence.

Tr. 25.  Discussing Plaintiff's somatoform disorder, the ALJ discussed in specific detail the evidence that did not support Plaintiff's allegations of total disability.  The ALJ stated:

The claimant's somatoform disorder does not meet the requirements of listing 12.07.  While Dr. Gustavson testified that the claimant had marked limitations in persistence and pace, there are several reasons why this assessment is not supported by the longitudinal record.  The evidence indicates that the claimant has completed one certificate at college and is now working on a second one.  This suggests the he completes his assignments, pursues his goals and attends classes.  These things could not be accomplished by someone who has marked limitations in persistence and pace.  The claimant has also been very persistent in his pursuit of narcotic medication and his use of marijuana.  The record clearly shows that he frequently attends his doctor's appointments and even seeks out alternative doctors and treatments.  I noted that the claimant has testified to frequent use of marijuana, sometimes as often as several times a day.  While he attributes this to "medical" uses, none of his doctors have prescribed this substance.  Marijuana is an illegal substance with known side effects of decreasing a users concentration, persistence and pace.  The amount of marijuana that the claimant has testified he imbibes would clearly impact his ability to be mentally alert and to persist in his activities.  While I do not find that the claimant's marijuana use is disabling under Listing 12.09, and therefore do not reach a finding his illicit drug use material, I do take account of the impact of this habitual use on cognitive functioning, especially his persistence.  Taking into account the claimant's demonstrated persistence in his studies, as well as his pursuit of medical treatment, his activities of daily living and his ability to persist in his efforts to obtain and use marijuana, I find that the claimant has only mild limitations in concentration, persistence, and pace.  He has moderate limitation in activities of daily living.  These are caused by the claimant's perceived pain.  The claimant is deconditioned because he has declined to exercise or do activities that could keep him in shape.  However, he is able to do child care and household tasks.  The claimant has moderate limitations in social functioning.  He has started a relationship with his girlfriend and carried it out over several years despite some significant limitations.  He is able to attend classes and apparently relate to other students.  During the period he was also able to engage in music practice with a band and to practice his instrument.  He has been noted to have anger problems and irritability with his medical providers and he has been arrested for domestic violence.  The claimant has had no episodes of decompensation of extended duration.

Tr. 26-27.  Assessing Mr. Reyes' physical impairments, the ALJ further noted the evidence that impugned Plaintiff's credibility.  In the context of assessing the medical evidence, plaintiff's statement's and the

REPORT AND RECOMMENDATION
Page - 4

1  residual functional capacity, the ALJ stated the following:

2  The claimant clearly did have an impairment in is low back which occurred after two motor
3  vehicle accidents.  It was during this period that Mr. Johnson made his statement that the
   claimant was severely limited.  This was a reasonable conclusion at the time.  He underwent
4  a laminectomy and discectomy which initially resulted in significant improvement, but he has
   continued to complain of chronic low back pain.  The evidence shows that, while he would
5  have been initially disabled, he would have been physically recovered enough to do some
   work activity by February of 2001.  I specifically note the claimant's conversation with Dr.
6  Panzer, the treating doctor on December 20, 2000, where the claimant reported that his
   anxiety was much improved overall (Exhibit 17F, p. 175).  I also note the physical therapy
7  evaluation on January 24, 2001 where the claimant reported that his pain was a 2-3 on a
   scale of 1-10 and he was playing his guitar and singing for a rock band, but could only do
8  this for a couple of hours.  He said his symptoms decreased with sitting (exhibit 24F, p. 1).
   Dr. Murray suggested vocational rehabilitation in February of 2001 (Exhibit 4F, p. 19 and
9  27F).

10 Since that time, the claimant has had multiple examinations in which chronic lumbar pain is
   diagnosed in the L4-5 and L5-S1 area with pain radiating, usually to his left leg.  He has
11 been treated with a variety of narcotic medications and has "self-mediated" with marijuana.
   He has problems taking his medications as prescribed.  He has failed to fill prescriptions and
12 taken mediation sporadically rather than as prescribed.  He has been noted to have a "very
   significant nonorganic component" to his pain 9exhibit 17F, p. 199)

13 As stated above, I reject the testimony of Dr. Gustavson that the claimant is unable to
   persist due to pain.  The claimant has a very dramatic presentation in his evaluations, but
14 few observations that he could not persist.  Dr. Frederick felt that the claimant was able to
   perform simple tasks(exhibit 7F).  Dr. Press felt that the claimant might have problems with
15 simple tasks but felt that the claimant's problem was treatable (Exhibit 11F).  The claimant
   has frequently denied psychological problems (Exhibit 17F, p.61), and his treating doctor
16 felt that the claimant was only demoralized (Exhibit 17F, p.71).  He has been inconsistent in
   taking medication and has declined therapy.  Additionally, the claimant has been able to
17 complete one certificate and begin working on another one in community college.  The
   claimant was also playing with a band only a few months after his surgery.  This suggests
18 that the claimant is able to complete more than simple, unskilled tasks.

19 The claimant has made wildly varying statement [sic] to his doctors, form being fecal and
   urinary incontinent, to losing weight to gaining weight, problems that are not documented in
20 the medial record.  The claimant has also blamed his pain on his accidents and on his
   surgery.  The claimant's recounting of his problems would suggest he had no relief after his
21 surgery, but the evidence shows that he had significant pain relief.  Additionally, doctors
   have failed to take into consideration the claimant's lack of motivation caused by frequent
22 marijuana use.  The claimant testified the he could persist in playing and writing music for
   up to several hours at a time, but later said that he could not concentrate.  He has a child
23 that he fathered in 2002, but he was complaining of impotence and erectile dysfunction.  He
   reported a new relationship in 2001, and has sustained this relationship although he told one
24 doctor that his back pain had caused him to break up.  Additionally, the claimant has tried
   to convey a picture that he was a hard working man who was brought down by his injury,
25 but he has only earned over $10,000 in one year of his life (Exhibit 3D).  Since his injury, he
   has played in a band, developed and maintained a relationship with a significant other,
26 fathered a child and participated in significant childcare while his significant other has
   completed vocational training, gone to college and completed one certificate and is now
27 working on another.

28 I agree with the State Agency physicians for their reasons for rejecting Dr. Cote's
   statements that the claimant could not even do sedentary work.  The claimant's examination

1

2

3

4

5

6

7

with Dr. Cote is inconsistent with the claimant's presentation at other evaluations. The claimant reported loss of sphincter control and bowel and bladder incontinence, with bladder incontinence occurring more than three times a week, but he has never sought treatment for this problem, nor has any medical provider noted this problem. Dr. Cote found a number of neurological signs that were not present in other examinations such as decreased pinprick in a dermatomal distribution and loss of strength. The claimant may have been having a very bad day at the time of Dr. Cote's evaluation, but the results have not been duplicated in other examinations. Of particular note is that the claimant's treating physicians have not noted this level of disability. Dr. Liang's statements are similar to those of Dr. Cote. Both doctors only saw the claimant on one occasion and both were told by the claimant that he had severe and significant limiting pain. Dr. Liang did not note any neurological deficits, but still opined that the claimant was disabled. I do not give Dr. Liang's statements significant weight, as it is based upon the claimant's misrepresentations.

8

9

10

Dr. Krilich, the claimant's treating physician has not suggested that the claimant is completely disabled. At the urging of the claimant and in pursuit of further training for the claimant, he has agreed that the claimant could not lift more than 15 pounds, thus assisting the claimant in obtaining vocational rehabilitation, but has not indicated that the claimant is completely disabled (exhibit 14F, pp. 60-61).

11

12

13

14

Accordingly, the undersigned finds the claimant retains the following residual functional capacity: the claimant could lift ten pounds occasionally and less frequently. He could stand or walk four hours in an eight hour day in 30 minute increments. He could sit six hours in an eight hour day in 30 minute increments. He could not climb ladders or work around heights or hazards. He could occasionally stoop, kneel, crouch or crawl and must have only limited public contact.

(Tr. 27-29)

15

16

17

18

19

20

21

22

23

24

Substantial evidence in the record supports the ALJ's analysis. For example, the ALJ noted inconsistency in Mr. Reyes' report to Dr. Flemming that he had lost 20% of his body weight (Tr. 210), when the record from that time period he in fact had only lost a few pounds, from 174.5 lbs in February 2001 (Tr. 177) to 162 lbs in June 2001, on the day he reported the significant loss (Tr. 212). Mr. Reyes' weight was as low as 156 lbs in July 2001, but soon returned to the 174 lb range in September 2001 (Tr. 212). The record does not support Mr. Reyes' report of a loss of 20% of his body weight. Another example, repeated numerous times by the ALJ, was the Plaintiff's drug seeking behavior and his use of marijuana. The record shows that Mr. Reyes sought prescription drugs which were not prescribed or suggested by his treating physicians (Tr. 193 & 397). Dr. Frederick's evaluation noted the following:

25

26

27

28

The claimant uses marijuana whenever he has it available and when he can afford it, which he said he is using "medicinally." He has been attempting to obtain Marinol with his physician for his problems with weight loss and chronic pain as well as the nerve damage, but has been unable to obtain this medication so far. He last smoked marijuana yesterday, again emphasizing that he was smoking it for pain and to increase his appetite. He expressed the opinion that he feels that other drugs are "chemicals" and do not help. When he has the marijuana available, he tends to smoke it several times a day. His is vague with me regarding his use of marijuana, again saying that he has been smoking it since the accident when he can "afford it."

REPORT AND RECOMMENDATION
Page - 6

1   (Tr. 196).  After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has

2   provided sufficient evidence to discredit the Plaintiff's allegations of total disability.  The record contains

3   substantial evidence supporting the ALJ's decision.  Accordingly, the ALJ properly discredited plaintiff's

4   testimony and allegations suggesting total disability.

5   **B. *THE ALJ PROPERLY WEIGHED THE MEDICAL EVIDENCE IN THE RECORD***

6          The ALJ is entitled to resolve conflicts in the medical evidence.  <u>Sprague v. Bowen</u>, 812 F.2d 1226,

7   1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

8   experts.  <u>Walden v. Schweiker</u>, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

9   contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

10  and legitimate reasons" supported by substantial evidence in the record for doing so.  <u>Murray v. Heckler</u>,

11  722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

12  substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating

13  physician."  <u>Lester v. Chater</u>, 81 F.3d 821, 831 (9th Cir. 1996).  In <u>Magallanes v. Bowen</u>, 881 F.2d 747,

14  751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion

15  because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied

16  on laboratory test results, contrary reports from examining physicians and on testimony from the claimant

17  that conflicted with the treating physician's opinion.

18         Here, Plaintiff contends the ALJ erroneously considered the medial evidence.  The ALJ carefully

19  reviewed and summarized plaintiff's medical history from April 2000 through November 2004.  The ALJ

20  noted the records and opinions from Drs. Panzer, Murray, Sundarum, Flemming, Frederick, Cote, Press,

21  Lysak, Peterson, Pace, Cove, Ready, Liang, Krilich, Egnew, Bhaskar, Pendleton, McBride, Gustavson, and

22  Smith (Tr. 18-26).   As noted above, after considering the medical evidence along with the record as a

23  whole, the ALJ concluded Mr. Reyes was not totally disabled and retained the residual functional capacity

24  to perform certain physical and mental tasks.  The ALJ found Mr. Reyes was capable of performing a

25  significant range of sedentary work.

26         After reviewing the record, this court finds much of the medical opinion evidence inconsistent.  For

27  instance, Dr. Murray, Dr. Cote, Dr. Liang and Dr. Gustavson each opined that Mr. Reyes should

28  essentially be declared disabled.   In contrast, Dr. Bhaskar,  Dr. Lysak, Dr. Peterson, and Dr. Krilich each

REPORT AND RECOMMENDATION
Page - 7

1   make findings that Mr. Reyes is not disabled.  The ALJ is given the duty to resolve conflicts in the medical

2   record and to determine the ultimate issue of disability.  As fully discussed above, many of the opinions

3   suggesting Mr. Reyes is unable to work are based on plaintiff's subjective complaints, which were properly

4   discredited by the ALJ.  It was therefore appropriate for the ALJ to review the medical opinions in light of

5   Plaintiff's credibility.

6   C. *THE ALJ'S PROPERLY RELIED ON TESTIMONY OFFERED BY THE VOCATIONAL EXPERT*

7        Plaintiff argues the ALJ erred when the ALJ relied on testimony provided by a vocational expert.

8   Where there is conflicting evidence the ALJ may resolve such conflicts, and the ALJ's findings will be

9   upheld where the weight of the medical evidence supports the hypothetical questions posed by the ALJ.

10  Martinez v. Heckler, 807 F.2d 771 (9th Cir. 1986).  A vocational hypothetical must set forth all the reliable

11  limitations and restrictions of the particular claimant that are supported by substantial evidence. See

12  Osenbrock, 240 F.3d at 1162-63; Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Although the

13  hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be

14  supported by the record.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)(*citing* Gallant v.

15  Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).

16       Here, the vocational expert called by the ALJ testified that a person with Mr. Reyes' work

17  experience, educational background, age, and limitations would be able to work as an electronic worker or

18  as a small parts assembler.   Plaintiff argues the ALJ's hypothetical posed to the vocational expert failed to

19  include all of Mr. Reyes' disabilities and limitations.

20        Plaintiff's argument is based on the premise that the ALJ erred when he evaluated Plaintiff's

21  credibility and the medical evidence.  As noted above, the court finds no error in the ALJ's evaluation of

22  Plaintiff's allegations of total disability or the ALJ's evaluation of the medical evidence.  The record

23  properly supports the ALJ's determination of Plaintiff's residual functional capacity.  Moreover, the record

24  properly supports the ALJ's hypothetical posed to the vocational expert and the ALJ's reliance on the

25  vocational expert's testimony to conclude Mr. Reyes is not disabled.

26                                          **CONCLUSION**

27       The ALJ's decision is supported by substantial evidence in the record.  Therefore, the Court should

28  AFFIRM the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal

REPORT AND RECOMMENDATION
Page - 8

1   Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written

2   objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for

3   purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by

4   Rule 72(b), the clerk is directed to set the matter for consideration on **December 22, 2006**, as noted in the

5   caption.

6           DATED this 30th day of November, 2006.

7                                           */s/ J. Kelley Arnold*
                                            J. Kelley Arnold
8                                           U.S. Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 9